**Electronically Filed
Intermediate Court of Appeals
29164
15-MAY-2012
08:41 AM**

NOS. 29164 and 30618


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


NO. 29164
WILLIAM MIDDLETON, Plaintiff-Appellant/Appellant v.
THOMAS WONG, Hearing Officer, State of Hawaiʻi,
Department of Human Services, Defendant-Appellee/Appellee
(CIVIL NO. 07-1-0479)

AND

NO. 30618
WILLIAM MIDDLETON, Plaintiff-Appellant/Appellant v.
STATE OF HAWAIʻI, DEPARTMENT OF HUMAN SERVICES,
Defendant-Appellee/Appellee
(CIVIL NOS. 08-1-1728 and 09-1-1540)


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT


SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Fujise and Leonard, JJ.)

In these consolidated appeals, Plaintiff-Appellant/Appellant William Middleton (Middleton), *pro se*, appeals from three separate judgments, entered by the Circuit Court of the First Circuit (circuit court),[1] upholding administrative decisions by Defendant-Appellee/Appellee State of Hawaiʻi, Department of Human Services (DHS).

Both Middleton's appeals are related to DHS's decision to terminate his medical assistance and food stamp benefits.  In Appeal No. 29164, Middleton appeals the circuit court's judgment

_____

[1]     The Honorable Eden Elizabeth Hifo presided in both cases.

upholding a DHS hearing officer's determination that DHS properly terminated Middleton's food stamp benefits upon discovering he was ineligible due to unreported assets.

Appeal No. 30618 involves two separate actions filed by Middleton with the circuit court. In the first action, Civil No. 08-1-1728, Middleton challenged DHS's efforts to seek repayment from Middleton for the value of the food stamps he received while ineligible. In the second action, Civil No. 09-1-1540, Middleton challenged DHS's determination that Middleton was disqualified from applying for food stamps for one year as a result of his failure to disclose the assets that rendered him ineligible.

We must first note that Middleton's briefs are in wholesale nonconformity with the Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b) and are extremely difficult to follow. On this basis alone, we could dismiss his appeal. HRAP Rule 30 (2001) ("When the brief of an appellant is . . . not in conformity with these rules, the appeal may be dismissed or the brief stricken and monetary or other sanctions may be levied by the appellate court."). See also Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001); Bettencourt v. Bettencourt, 80 Hawai'i 225, 228, 909 P.2d 553, 556 (1995) ("appellant's brief in almost no respect conforms to the requirements of [HRAP] Rule 28(b), which we have held is, alone, sufficient basis to affirm the judgment of the circuit court") (citation omitted).

However, we also recognize that our appellate courts have "consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible," Schefke, 96 Hawai'i at 420, 32 P.3d at 64 (internal quotation marks and citation omitted; emphasis supplied), and have addressed the merits of an appeal, the nonconformance of the appellate briefs notwithstanding. See, e.g., O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 385-86, 885 P.2d 361, 363-64 (1994). We surmise that the foregoing policy is most acute where, as

2

here, the litigant is *pro se*.  Thus, we address Middleton's arguments insofar as they can be gleaned from his briefs.

We begin by acknowledging that our review of an appeal from an agency decision is *de novo*.  That is to say, we decide "whether the court under review was right or wrong in its decision."  <u>Soderlund v. Admin. Dir. of the Courts</u>, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001) (quoting <u>Farmer v. Admin. Dir. of the Court</u>, 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000)) (internal quotation marks and brackets omitted).  However, that is not to say that, as Middleton apparently argues the circuit court should have, we are under any obligation to scour the record and make Middleton's arguments for him.  With these concepts in mind, we consider Middleton's appeals.

In Appeal No. 29164, it appears Middleton claims that DHS improperly counted his assets--an "Ameriprise account" that he had possessed at the time of his application for benefits but did not disclose in the application--in determining his eligibility for food stamps and medical assistance.[2]  In particular, he argues that his assets are proceeds from a pension plan and thus should be excluded as assets with respect to the food stamp program pursuant to Hawaii Administrative Rules (HAR) § 17-675-29 (amended 1994).  That section states, *inter alia*, that assets excluded from the food stamp program include "cash value of life insurance policies" and "cash value of pension plans or funds, except for . . . individual retirement accounts (IRA's)[.]"  HAR § 17-675-29(3) and (4).  The DHS hearing officer rejected this argument, and the record reveals that the Ameriprise account in question is designated as a rollover IRA. We agree with the DHS hearing officer's rejection of Middleton's argument. Middleton does not offer any other cogent argument that convinces this

---

[2]     DHS discovered this Ameriprise account when it reviewed a report provided by the Internal Revenue Service, reflecting Middleton had an Individual Retirement Account (IRA) valued at $22,308.24.

3

court that the circuit court erred in upholding DHS's determination that Middleton was not eligible for food stamps or medical assistance.

In Appeal No. 30618, Civil No. 08-1-1728, Middleton contends that the circuit court erred in upholding DHS's determination that Middleton was required to repay the value of the food stamps he received while ineligible. In support of this contention, Middleton apparently maintains that DHS's overpayment claims are invalid because of a number of procedural issues.

1. Middleton contends that DHS did not assist him in completing the application form for the food stamp program. This is an issue that Middleton did not raise before the circuit court. New issues on appeal are generally deemed waived. See Kemp v. State of Hawaiʻi Child Support Enforcement Agency, 111 Hawaiʻi 367, 391, 141 P.3d 1014, 1038 (2006). Even were we to consider Middleton's argument on this issue, it is without merit. While HAR § 17-647-3 provides for DHS assistance with completing an application, it does not mean that the department is responsible for material omissions by the applicant. Middleton signed the application under penalty of law that his answers were correct and complete to the best of his knowledge and that he understood the questions and the record reflects he was informed of his rights and responsibilities with regard to the application.

2. Middleton also seems to argue that there was a due process violation because there was no "'Full Disclosure' with 'Adequate Notice' (sic) by DHS." At another point, he contends that he did not receive all required documents from DHS. However, Middleton does not adequately explain--either factually or legally--how his due process rights were violated. Nothing in the record indicates that Middleton did not receive relevant documentation from DHS. Notably, DHS sent Middleton 201 pages of documents relevant to his case on March 16, 2009.

4

3. The record does not corroborate Middleton's allegations, nor does he provide adequate supporting legal authority, that the hearings process was conducted illegally, that the hearings officer did not rule on several documents he submitted, that he was not provided with copies of documents submitted at the hearing, and that he was not permitted to present evidence or argument regarding DHS's overpayment of food stamps and subsequent adjustments.

4. Middleton appears to argue, but does not provide legal authority for his position, that the overpayment notices sent by DHS, which originally indicated the overpayment was the result of "client error" (as opposed to an intentional violation), prevented DHS from later determining there was an intentional program violation. As DHS must identify and investigate suspected fraud before classifying an overpayment as an intentional program violation, see HAR § 17-604.1-3, there is no authority suggesting DHS cannot indicate "client error" on the notice of food stamp overpayment before a finding of an intentional violation is made.

5. Middleton's argument that the circuit court erred in setting a briefing schedule for oral argument is without merit. See Hawaii Revised Statutes (HRS) § 603-21.9 (1993) (granting circuit courts the power "to make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction").

6. Middleton also argues that the circuit court erred in denying his request for alternative dispute resolution, referencing HRS § 91-14. Middleton points to nothing that supports the notion that the circuit court was required to grant such a motion.

7. Finally, Middleton seems to argue that he was entitled to a jury trial and the circuit court erred in denying this request. HRS § 91-14(f) (1993) states that judicial review of a hearing "shall be conducted by the appropriate court without

5

a jury and shall be confined to the record[.]" The only exception is when a jury trial is required by law. Middleton presents no authority, nor do we know of any, suggesting that a jury trial is required in an appeal of an administrative agency decision under the circumstances of this case.

In Appeal No. 30618, Civil No. 09-1-1540, Middleton contends that the circuit court erred in upholding DHS's determination that Middleton should be disqualified from receiving food stamps for twelve months due to his intentional failure to disclose an asset. A hearing was held on May 15, 2009, to determine whether Middleton committed an intentional program violation[3] when he failed to report his Ameriprise account. The hearings officer determined that Middleton had committed an intentional program violation, rendering him ineligible to participate in the food stamp program for one year pursuant to HAR § 17-604.1-9. Middleton does not appear to dispute this finding. The record indicates that there was clear evidence that Middleton intentionally failed to report his Ameriprise account when he applied for food stamps. Middleton claimed that he believed the asset was exempt because it was a life insurance policy. However, the application requires reporting of life insurance policies as well as annuities. We find no basis to conclude DHS erred in its determination that Middleton intentionally concealed information regarding his assets in his food stamps application.

Therefore, the Circuit Court of the First Circuit's April 21, 2008 Judgment entered in Civil No. 07-1-0479-03, the

---

[3]      HAR § 17-604.1-2 defines an intentional program violation, in relevant part, as:

> [A]ny action by an individual, for the purpose of establishing or maintaining eligibility or for increasing or preventing a reduction in benefits, who intentionally:
>
>      (1) Made a false or misleading statement; [or]
>
>      (2) Misrepresented, concealed, or withheld facts[.]

6

June 17, 2010 Judgment entered in Civil No. 08-1-1728, and the June 17, 2010 Judgment entered in Civil No. 09-1540-07 are hereby affirmed.

DATED:  Honolulu, Hawai‘i, May 15, 2012.

On the briefs:

William Middleton,
Plaintiff-Appellant/Appellant,
pro se.

Chief Judge

Heidi M. Rian,
Susan R. Kern,
Deputy Attorneys General,
for Defendant-
Appellee/Appellee.

Associate Judge

Associate Judge

7